United States District Court
Southern District of Texas
**ENTERED**
February 11, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **ROBERT GROSS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:20-CV-00192 |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Robert Gross seeks an $838,077.40 tax refund under 26 U.S.C. § 1341. The United States filed a Motion to Dismiss, arguing that Gross fails to a state a plausible claim because a criminal judgment arising out of a plea agreement prevents him from receiving a tax refund under Section 1341. The Court **GRANTS** the Motion to Dismiss.

### I. BACKGROUND

Gross, a former psychiatrist, filed this lawsuit on July 27, 2020. (Dkt. No. 1). He asserts a single claim under 26 U.S.C. § 1341 to obtain a tax refund. (*Id.*). Gross argues that he is entitled to a refund because he "reimbursed to Medicare $1,832,869.21 and to private insurance companies $297,000" as part of a plea deal in a criminal case. (*Id.* at 2). Gross then filed an amended 2016 tax return requesting a refund based on the difference between "the taxes he paid and the taxes he actually owed after he reimbursed Medicare and the private insurance companies." (*Id.*). He claims that he overpaid the IRS $838,077.40—the amount he seeks in this case. (*Id.*). The IRS apparently did not consider the merits of Gross's claim. (*Id.*).

Less than two months after this lawsuit was filed, the United States filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 5). The United States argues that Gross cannot state a claim for relief because a plaintiff is only entitled to a tax refund under 26 U.S.C. § 1341 if (1) the taxpayer had an unrestricted right to income in the prior years; and (2) the taxpayer provides another statutory source for a deduction. (*Id.* at 1). According to the United States, both requirements are not present here. Gross filed a Response, (Dkt. No. 15), the United States filed a Reply,[1] (Dkt. No. 17), and Gross filed a Sur-Reply. (Dkt. No. 21). The Motion to Dismiss is ripe.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a

---

[1] In its Reply, the United States raises a new argument: Gross's complaint should be dismissed under the first-to-file rule because the issues in this case and his 28 U.S.C. § 2255 habeas petition on appeal "substantially overlap." (Dkt. No. 17 at 1, 3–5). Gross opposes this request. (Dkt. No. 21 at 2–3). "Reply briefs cannot be used to raise new arguments." *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *accord Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 729 n.3 (S.D. Tex. 2010). The Court therefore analyzes the arguments originally presented in the Motion to Dismiss.

cause of action, supported by mere conclusory statements, do not suffice." *Id.* Put differently, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (citation omitted).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept the plaintiff's factual allegations as true and view those allegations in the light most favorable to the plaintiff. *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). The court must evaluate whether "a complaint contains sufficient factual matter to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Dismissal . . . is appropriate where the plaintiff fails to allege 'enough facts to state a claim that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

A court must liberally construe *pro se* filings. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). But even if a plaintiff proceeds *pro se*, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted).

### III.     DISCUSSION

#### A.     WHETHER DOCUMENTS ARE INCORPORATED BY REFERENCE

The United States requests that the Court consider the plea agreement and factual résumé from Gross's criminal case because Gross incorporates both documents by reference in his Complaint. (Dkt. No. 5 at 2–3). In response, Gross claims that these documents were not referenced in his Complaint. (Dkt. No. 15 at 2).

A federal court can consider documents attached to a defendant's motion to dismiss if those documents are referred to in the complaint and are central to the plaintiff's claims. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). In his Complaint, Gross specifically references his plea agreement. (Dkt. No. 1 at 2). And that plea agreement is central to Gross's single claim under 26 U.S.C. § 1341 because, as discussed below, his claim is precluded if it arises from fraudulently obtained income. Thus, the Court finds that Gross incorporated the plea agreement by reference. *See Walker*, 938 F.3d at 735.

The Court, however, may not consider the factual résumé under the same rule. While the United States argues that the *plea agreement* incorporates the factual résumé, the United States does not cite authority for the proposition that a document referenced in a complaint and central to the complaint can, in turn, open the door to consideration of a document referenced by that document. Put another way, incorporation by reference does not open the door to "turtles all the way down."[2] Instead, the standard is whether

---

² *See Rapanos v. United States*, 547 U.S. 715, 754 n.14, 126 S.Ct. 2208, 2233 n.14, 165 L.Ed.2d 159 (2006) (Scalia, J.).

the document—here, the factual résumé—was referenced in the complaint. *See Walker*, 938 F.3d at 735. It was not. The Court therefore considers, as incorporated by reference, the plea agreement but not the factual résumé.

## B. REQUEST FOR JUDICIAL NOTICE

The United States requests that the Court take judicial notice of Gross's indictment, plea agreement, factual résumé, and criminal judgment. (Dkt. No. 5 at 3). In his Response, Gross urges the Court to decline the invitation because the documents "[do] not pertain to the disputed tax matter."[3] (Dkt. No. 15 at 2). If the Court takes judicial notice of those documents, Gross asks that the Court also consider documents filed in his habeas appeal.[4] (*Id.*).

At the Rule 12(b)(6) stage, a federal court can also consider "matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker*, 938 F.3d at 735. Under Rule 201, a "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Here, the documents that the United States asks the Court to take judicial notice of are not subject to reasonable dispute because they are accurately and readily determined from sources—the U.S. District Court for the Northern District of Texas and

---

[3] Even though Gross claims these documents are irrelevant, he continues to reference the documents throughout his pleadings. *See, e.g.*, (Dkt. No. 15 at 3) ("Dr. Gross signed a plea agreement under which he reimbursed $1,832,869.21 to Medicare[.]").

[4] The United States does not oppose this request in its Reply. *See* (Dkt. No. 17).

5

the U.S. Court of Appeals for the Fifth Circuit—whose accuracy cannot be reasonably questioned. *See* Fed. R. Evid. 201(b). Moreover, federal courts have judicially noticed criminal convictions, plea agreements, and factual résumés. *See, e.g.*, *Garcia v. Kerry*, 557 F. App'x 304, 309 (5th Cir. 2014) (per curiam) (criminal conviction); *Berry v. Wal-Mart Stores Tex., LLC*, No. 4:18-CV-4619, 2019 WL 1407212, at *4 (S.D. Tex. Mar. 28, 2019) (guilty plea); *State Farm Mut. Auto. Ins. Co. v. Giventer*, 212 F. Supp. 2d 639, 647 (N.D. Tex. 2002) (guilty plea and factual résumé). Thus, the Court takes judicial notice of the indictment, plea agreement, factual résumé, and criminal judgment. The Court also takes judicial notice of the habeas proceedings before the Northern District of Texas and Fifth Circuit.[5]

### C.   CLAIM UNDER 26 U.S.C. § 1341

The United States argues that Gross fails to state a claim under 26 U.S.C. § 1341. (Dkt. No. 5 at 5–10). Gross disagrees, offering various theories for why he has stated a plausible claim. (Dkt. No. 15). The Court agrees with the United States.

#### 1.   Overview of Section 1341

Gross seeks a tax refund under 26 U.S.C. § 1341. Broadly, Section 1341 "allows an income tax deduction to a taxpayer who previously received taxable income under a claim of right, but who must later repay some or all of that income." *Estate of Smith v. Comm'r*, 198 F.3d 515, 526 (5th Cir. 1999) (emphasis omitted). There are multiple

---

[5] On January 28, 2020, U.S. District Judge Mark T. Pittman denied Gross's Motion to Vacate under 28 U.S.C. § 2255. *Gross v. United States*, No. 6:16-CV-00071-P, 2020 WL 428057 (N.D. Tex. Jan. 28, 2020). On appeal, the Fifth Circuit issued a certificate of appealability on April 9, 2021 solely as to whether Gross's counsel was ineffective for failing to file a notice of appeal. Briefing on the merits was completed on August 26, 2021, but the Fifth Circuit has not issued a decision. *United States v. Gross*, appeal docketed, No. 20-10303 (5th Cir. Mar. 19, 2020).

requirements, two of which are at issue here. First, under Section 1341, an item must be "included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item[.]" 26 U.S.C. § 1341(a)(1). Second, "Section 1341 only applies where the taxpayer is entitled to a deduction under another provision of the tax code." *Wood v. United States*, 863 F.2d 417, 420 (5th Cir. 1989) (citing *United States v. Skelly Oil Co.*, 394 U.S. 678, 683, 89 S.Ct. 1379, 1382–83, 22 L.Ed.2d 642 (1969)). Deductions, in turn, are strictly construed against the taxpayer because "they are a matter of legislative grace." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84, 112 S.Ct. 1039, 1043, 117 L.Ed.2d 226 (1992) (citations omitted).

### 2. <u>Unrestricted Right</u>

As to the "unrestricted right" inquiry, the United States argues that Gross pleads legal conclusions masquerading as factual allegations. The United States maintains that it could not have appeared to Gross that he had an unrestricted right to the "ill-gotten proceeds." (Dkt. No. 5 at 1, 6–8).

In response, Gross raises three main arguments.[6] First, Gross argues that he pleaded enough facts to survive a motion to dismiss, including that he earned $1.8 million in 2016, paid taxes on that amount, later reimbursed Medicare and insurance companies,

---

[6] Gross also speculates that he will prevail in his federal habeas petition, which would then render the tax dispute a non-issue. (Dkt. No. 15 at 1–2, 4, 6). Indeed, much of Gross's pleadings re-litigate the merits of his criminal case. *See, e.g.*, (Dkt. No. 15 at 8) ("[T]he Government's contention that Dr. Gross engaged in fraud because of a time commitment is erroneous and false."). Whether Gross ultimately prevails on his habeas petition is irrelevant to the disposition of the civil case that Gross filed in this Court. The Court examines the pleadings as they stand today, not as Gross wishes them to be.

7

filed an amended 2016 tax return, and received an IRS acknowledgment that he is entitled to a refund. (Dkt. No. 15 at 5–7). Second, Gross asserts that he subjectively believed that he "had an unrestricted right to his earned income" while he was a practicing psychiatrist. (*Id.* at 3, 5–7). Finally, Gross argues that his case is distinguishable from the cases cited by the United States because his criminal case did not involve fraud or funds that "were received from ill-gotten sources." (*Id.* at 9–11). Rather, Gross claims that he did not receive funds from the United States for certain patients. (*Id.* at 10–11).

The "unrestricted right" requirement provides that "an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item[.]" 26 U.S.C. § 1341(a)(1). In support of this requirement, Gross pleads that he "received income in the years 2007 – 2014 to which it appeared [to him that he] had an unrestricted right" and later "duly paid tax on the income to which he reasonably thought he had an unrestricted right." (Dkt. No. 1 at 1). But as the United States correctly points out, Gross fails to plausibly allege why it appeared that he had an unrestricted right to the proceeds. By merely tracking the language of the statute, Gross asserts "legal conclusions masquerading as factual conclusions," which are insufficient. *See Taylor*, 296 F.3d at 378.

To avoid this finding, Gross urges the Court to read Section 1341(a)(1) as a subjective, not objective, inquiry. In other words, he argues that merely alleging that he *believed* there was an unrestricted right is sufficient to survive a motion to dismiss. Whether the Section 1341 inquiry is subjective or objective is unclear. The Fifth Circuit, addressing Section 1341(a)(1), stated it is "reluctant to hold that a wholly subjective test

8

of a claim of right to ill-gotten gains governs § 1341(a)(1)." *Wood*, 863 F.2d at 420. But the court ultimately declined to reach a conclusion. Instead, the court ruled that relief under Section 1341 was foreclosed for a different reason—the plaintiff's inability to "furnish another statutory source for a deduction."[7] *Id.*

Even if Gross is correct that the Section 1341(a)(1) inquiry is subjective rather than objective, he still fails to state a claim. This is illustrated in McKinney v. United States, where the Fifth Circuit considered the "unrestricted right" language under Section 1341(a)(1). The Fifth Circuit plainly held: "When the item was embezzled funds it is clear that it could not appear to the taxpayer that he had any right to the funds, much less 'an unrestricted right' to them." *McKinney v. United States*, 574 F.2d 1240, 1243 (5th Cir. 1978).

The same reasoning applies with equal force here. Gross was charged by indictment with fifty-two counts of health care fraud in violation of 18 U.S.C. § 1347.[8] (Dkt. No. 5-1 at 21–35). The plea agreement, signed by Gross and his counsel, states that he "pleads guilty to the offense alleged in count eleven of the indictment, . . . understands the nature and elements of the crime to which he is pleading guilty, and agrees that the

---

[7] As the Court explains below, Gross also fails to state a claim for the same reason.

[8] Section 1347 governs a person who

> knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services[.]

18 U.S.C. § 1347(a).

9

factual résumé he has signed is true and will be submitted as evidence." (Dkt. No. 5-2 at 1). Gross was warned that the court could impose a penalty for "restitution to victims or to the community, which may be mandatory under the law" as well as "forfeiture of property." (*Id.* at 2). He agreed that $1,832,869.21 constituted "restitution owing and payable to the United States" in his criminal case. (*Id.* at 3, 6–9).

The factual résumé and criminal judgment, of which the Court takes judicial notice, further support what is already undisputed. Specifically,

> Beginning in or about January 2009, and continuing to on or about June 20, 2014, in the San Angelo Division of the Northern District of Texas, and elsewhere, **Robert Hadley Gross**, defendant, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, to wit: **Gross** submitted claims to Medicare and Medicaid for services not rendered in the manner billed, which included for services that were allegedly rendered after patients had died.

(Dkt. No. 5-3 at 1–2) (emphases in original). After recounting the details of the crime, the factual résumé then states that "Gross admits and acknowledges that the amount of loss and restitution in his scheme to defraud Medicare and Medicaid is $1,832,869.21." (*Id.* at 5). Lest there be any doubt, the factual résumé concludes as follows: "Gross admits that he knowingly and willfully executed a scheme and artifice to *defraud* a health care benefit program, namely Medicare and Medicaid." (*Id.*) (emphasis added).

The criminal judgment memorializes Gross's plea agreement and factual résumé. The judgment specifically ordered Gross to "immediately pay restitution in the amount of $1,832,869.21" to the district clerk. (Dkt. No. 5-4 at 4). Under the section of the

10

judgment entitled "CRIMINAL MONETARY PENALTIES," the amount of restitution is also listed as $1,832,869.21.  (*Id.* at 5).

In the end, it is undisputed that Gross pleaded guilty to health care fraud.  (Dkt. No. 1 at 2); (Dkt. No. 15 at 11).  The $838,077.40 that Gross seeks as a tax refund derives from the $1,832,869.21 that he was ordered to pay in his criminal judgment.  Because the funds were improperly obtained, it could not appear to Gross that he had a right to the funds, much less an unrestricted right to them.[9]  *McKinney*, 574 F.2d at 1243.

### 3. Another Statutory Source

The United States makes a second argument in favor of dismissal.  More specifically, that Gross fails to identify another statutory source for a deduction—a requirement under Section 1341.  (Dkt. No. 5 at 9–10).  Gross responds by pointing to the Trade or Business Expense Deduction, 26 U.S.C. § 162(a), arguing that he can "deduct all ordinary and necessary trade or business expenses."  (Dkt. No. 15 at 12).  He also argues

---

[9] Other federal courts agree.  The Federal Circuit, finding the Fifth Circuit's reasoning in *McKinney* persuasive, explained as follows:

> When a taxpayer knowingly obtains funds as the result of fraudulent action, it simply cannot appear from the facts known to him at the time that he has a legitimate, unrestricted claim to the money.  When committing an intentional wrong, a taxpayer must be prepared for the eventuality of being discovered and being held liable for repayment in the form of restitution, disgorgement, civil or criminal penalties, or the like. A taxpayer's illicit hope that his intentional wrongdoing will go undetected cannot create the appearance of an unrestricted right.

*Culley v. United States*, 222 F.3d 1331, 1335–36 (Fed. Cir. 2000) (internal quotations omitted).  Indeed, the Federal Circuit, like this Court, relied on the defendant's plea agreement, where the defendant admitted that "he knowingly orchestrated and participated in schemes to defraud[.]" *Id.* at 1336.  The Federal Circuit thus concluded that "it could not have appeared to [the defendant] that he had an unrestricted right to funds received as a result of those activities." *Id.*; *accord Robb Evans & Assocs., LLC v. United States*, 850 F.3d 24, 32 (1st Cir. 2017) (collecting cases).

11

that the money he returned to the United States as part of his plea deal qualifies as compensatory damages, liquidated damages, or reimbursement under 26 C.F.R. § 1.162-21(b)(2).[10]  (*Id.* at 12–13); (Dkt. No. 21 at 3).  The United States, in its Reply, asserts that Gross is ineligible for the Trade or Business Expense Deduction by nature of the criminal judgment.  (Dkt. No. 17 at 1–2, 5–8).

"Section 1341 only applies where the taxpayer is entitled to a deduction under another provision of the tax code."  *Wood*, 863 F.2d at 420.  Gross points to 26 U.S.C. § 162(a).  In 2016, the year Gross seeks a tax refund,[11] Section 162(a) provided a deduction on "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]"  26 U.S.C. § 162(a) (2014).  But "[n]o deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law."  *Id.* § 162(f) (2014); *accord* 26 C.F.R. § 1.162-21(a)(1) (1975).  Federal regulations defined "fine or similar penalty" to include "an amount . . . [p]aid pursuant to . . . a plea of guilty . . . for a crime (felony or misdemeanor) in a criminal proceeding[.]"  26 C.F.R. § 1.162-21(b)(1)(i) (1975).

---

[10]   26 C.F.R. § 1.162-21(b)(2) (1975) exempts certain costs from the definition of "fine or similar penalty," including court costs and compensatory damages.  It does not discuss liquidated damages or reimbursement.

[11]   Because Gross filed an amended return and seeks a refund for 2016, the Court examines the statute and regulations in effect in 2016.  *See, e.g.*, *Petroleum Corp. of Tex., Inc. v. United States*, 939 F.2d 1165, 1168 (5th Cir. 1991) (examining the tax statute in effect at the time of the taxpayers' distributions); *Diamond Nat'l Corp. v. State Bd. of Equalization*, 425 U.S. 268, 96 S.Ct. 1530, 47 L.Ed.2d 780 (1976) (per curiam) (concluding a bank was exempt from taxes under a federal statute that "was in effect at the time here pertinent").

Here, Gross seeks a tax refund related to funds that were paid under a plea of guilty for a crime in a criminal proceeding. 26 C.F.R. § 1.162-21(b)(1)(i) (1975). Thus, the $1,832,869.21 falls under the then-definition of "fine or similar penalty," which renders the amount ineligible for a deduction. 26 U.S.C. § 162(f) (2014). For this additional reason, Gross fails to state a claim under Rule 12(b)(6).

### D.   LEAVE TO AMEND

The United States requests that the Court deny leave to amend because Gross "cannot overcome a pleading hurdle—that the Medicare-Fraud Proceeds are derived from illicit activity." (Dkt. No. 5 at 10). Gross requests an opportunity to amend if the Court concludes that he failed to state a claim. (Dkt. No. 15 at 13).

A federal district court can deny leave to amend if leave is futile. *Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020). Here, even if the Court granted leave to amend, "the complaint as amended would be subject to dismissal[.]" *Aldridge v. Mississippi Dep't of Corr.*, 990 F.3d 868, 878 (5th Cir. 2021). The refund that Gross seeks is based on income he improperly obtained. *McKinney*, 574 F.2d at 1243. Because this income was improperly obtained, he cannot plausibly plead an unrestricted right. *Steffen v. United States*, 995 F.3d 1377, 1380 (Fed. Cir. 2021). Moreover, Gross does not explain what, if any, changes he would make. Thus, amendment is futile. *See, e.g., Brown v. Brown*, 842 F. App'x 948, 950 (5th Cir. 2021) (per curiam).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss. (Dkt. No. 5). The Court **DISMISSES WITH PREJUDICE** *pro se* Plaintiff Robert Gross's single claim under 26 U.S.C. § 1341.

It is SO ORDERED.

Signed on February 10, 2022.

*/s/ Drew B. Tipton*
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**